**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

```
MELISSA L. ANSPACH, KURT A.       :
ANSPACH, and KAREN E. ANSPACH     : CIVIL ACTION
                                  :
          vs.                     :
                                  : NO. 08-CV-2600
CITY OF PHILADELPHIA, DEPT. OF    :
PUBLIC HEALTH, ET. AL.            :
```

**MEMORANDUM AND ORDER**

**JOYNER, J.**                                   **October 27, 2008**

　　　This civil action has been brought before the Court on
Motion of the Defendant, Dr. Jitendra Shah, to Dismiss
Plaintiff's Amended Complaint Pursuant to Fed. R. Civ. P.
12(b)(6), for a More Definite Statement Pursuant to Fed. R. Civ.
P. 12(e), and to Strike Pursuant to Fed. R. Civ. P. 12(f) (Docket
No. 7).  For the reasons outlined below, the Motion shall be
granted in part and this case again remanded to state court.

**History of the Case**

　　　This case, which is another incarnation of a matter which
was previously before us as Civil Action No. 05-810, arose out of
a visit by Plaintiff Melissa Anspach to the City of
Philadelphia's Public Health Center No. 10 on January 26, 2004.
Some three days before her visit to the clinic Melissa, who was
then sixteen years old, had unprotected sexual intercourse and
went to the Health Center to request a pregnancy test.

Apparently, the center only administered pregnancy tests on
family planning days and the date on which Melissa appeared at
the center was not such a day.  Although she left the center
after learning this, Melissa returned a short time later at the
urging of a friend and asked instead for the "morning after,"
emergency contraceptive pill.[1]  Presumably because of her age,
the receptionist directed her to the pediatric section of the
clinic where she first was interviewed by Defendant Maria
Fedorova, a social worker, and later seen by Defendant Mary
Gilmore, a registered nurse.  After allegedly signing a consent
form and having her blood pressure and temperature checked,
Melissa was given the pills with instructions to take 4
immediately and 4 more in twelve hours.  At approximately 5:00
a.m. the following morning, shortly after taking the second
dosage of 4 pills, Melissa began suffering severe stomach pains
and became violently ill, her face became swollen and red and she
suffered from subconjunctive hemorrhaging in the eyes caused by
the violent vomiting.

By their complaint against the various defendants,
Plaintiffs allege that despite knowing that "a 16 year old child
can not fully comprehend the pros and cons of taking prescription
only medication without the help of a parent or a medical doctor

_____

[1] In this case, the pills given to Melissa Anspach were manufactured by
Wyeth Laboratories and were marketed under the trade name "Nordette."  (Pl's
Am. Compl., ¶46).

and that a unemancipated immature minor does not have the legal capacity to sign such forms," Ms. Fedorova told Melissa that she could have the pills but only if she first signed a consent form. (Pl's Am. Compl., ¶30).  It is alleged that Nurse Gilmore gave Melissa the pills, but that she did so only after receiving instructions from Ms. Fedorova on how they should be taken and after advising the pediatrician on duty that day, Defendant Dr. Jitendra Shah, that there was a sixteen-year-old patient who had not been examined or tested for pregnancy to whom she was about to give the morning after pills.  Dr. Shah allegedly responded "Mary, whatever you want to do."  (Pl's Am. Compl., ¶s36-37). When Melissa inquired into the availability of medication to prevent nausea or vomiting as was referenced in the consent form, Plaintiffs allege that Nurse Gilmore again consulted with Dr. Shah and that she returned to Melissa and told her that no such medication was available and that she should just drink tea and ginger ale.

As in their complaint in the previous lawsuit (which was also first filed in the Philadelphia County Court of Common Pleas and subsequently removed to this Court), the Anspachs again invoke 42 U.S.C. §1983, alleging that the defendants' actions violated their federal constitutional rights to familial privacy, to their parental constitutional right to be free from unnecessary or unwarranted governmental intrusions into the

3

raising of their children, to Melissa's constitutional rights to privacy and bodily integrity, and that, by giving Melissa a purportedly "harmful medication," Defendants were in violation of Title X of the Public Health Service Act, 42 U.S.C. §300, *et. seq.* (governing projects and grants to state and local agencies for family planning services). In Counts III and IV, Plaintiffs make these same claims under the Pennsylvania Constitution. Additionally, the Anspachs assert common law claims against the various defendants for assault and battery, negligent and intentional infliction of emotional distress, negligent supervision, breach of contract and for violation of the Unfair Trade Practices and Consumer Protection Act, 73 P.S. §201-1, *et. seq.*

Defendants move to dismiss the plaintiffs' complaint in its entirety pursuant to Fed. R. Civ. P. 12(b)(6). First, as to Counts I-IV alleging causes of action pursuant to 42 U.S.C. §1983 and the Pennsylvania Constitution, Defendants submit that these claims are barred by the doctrine of collateral estoppel or issue preclusion because the U.S. Court of Appeals for the Third Circuit previously considered and addressed them in the earlier action and because the plaintiffs have failed to assert a private cause of action under Title X. Defendants move for dismissal of the complaint's remaining counts on the grounds that they fail to state viable claims on which relief may be granted and, as to the

plaintiffs' claims under the theories of Title X, coerced consent
and false information about medication, as barred by the Statute
of Limitations.  Alternatively, Defendants assert that these
remaining claims cannot stand due to Defendants' immunity from
suit or that they should be stricken due to insufficient
specificity.

**Standard of Review**

In response to a pleading, under Federal Rule of Civil
Procedure 12(b)(6), a Defendant may assert by motion that the
Plaintiff's complaint "[fails] to state a claim upon which relief
can be granted."  In analyzing a Rule 12(b)(6) motion to dismiss,
we "accept all factual allegations as true, construe the
complaint in the light most favorable to the plaintiff, and
determine whether, under any reasonable reading of the complaint,
the plaintiff may be entitled to relief."  Phillips v. County of
Allegheny, 515 F.3d 224, 233 (3d Cir. 2008)(citations omitted).
"To survive a motion to dismiss, a civil plaintiff must allege
facts that 'raise a right to relief above the speculative level .
. . .'"  Id. at 232 (quoting Bell Atl. Corp. v. Twombley, 127 S.
Ct. 1955, 1965 (2007)).  In other words, the plaintiff must
provide "enough facts to raise a reasonable expectation that
discovery will reveal evidence of the necessary element[s]" of a
particular cause of action.  Id. at 234.  In ruling on a Rule
12(b)(6) motion to dismiss, the court may consider documents

"integral to or explicitly relied upon in the complaint." In re Rockefeller Sec. Lit., 184 F.3d 280, 287 (3d Cir. 1999).

Generally speaking, motions for a more specific pleading pursuant to Fed. R. Civ. P. 12(e) should be granted only when "a pleading to which a responsive pleading is permitted is so vague or ambiguous that the opposing party cannot respond, even with a simple denial, in good faith, without prejudice to himself." Jeremy M. v. Central Bucks School District, Civ. A. No. 99-4954, 2001 U.S. Dist. LEXIS 1863 at *6 (E. D. Pa. Jan. 31, 2001), citing 2A J. Moore, Moore's Federal Practice P. 12.18[1] at 12-161 (1995) and Hicks v. Arthur, 843 F. Supp. 949, 959 (E. D. Pa. 1994). "The basis for granting such a motion is unintelligibility, not lack of detail. As long as the defendant is able to respond, even if only with a simple denial, in good faith, without prejudice, the complaint is deemed sufficient for purposes of Rule 12(e)." Id.

Thus, because Rule 8 requires only that a complaint include "a short and plain statement of the claim showing that the pleader is entitled to relief," the test for the sufficiency of a complaint requires the plaintiff to set forth a set of facts that serves to put the defendant on notice as to the nature and basis for the claim. See, Douris v. Dougherty, 192 F. Supp. 2d 358, 367 (E. D. Pa. 2002).

**Discussion**

*A.   Issue Preclusion/Collateral Estoppel.*

As noted, the defendants first seek dismissal of Counts I -
IV of the plaintiffs' complaint because these claims were
previously fully litigated in the earlier action, docketed in
this Court at No. 05-810.

Collateral estoppel or issue preclusion generally refers to
the effect of a prior judgment in foreclosing successive
litigation of an issue of fact or law actually litigated and
resolved in a valid court determination essential to the prior
judgment, whether or not the issue arises on the same or a
different claim.  <u>New Hampshire v. Maine</u>, 532 U.S. 742, 748-749,
121 S. Ct. 1808, 1814, 159 L. Ed. 2d 968 (2001).   Although its
decisions have employed slight variations, the Third Circuit has
consistently applied the following four standard requirements for
the application of collateral estoppel embodied in the
Restatement (Second) of Judgments §27: "(1) the identical issue
was previously adjudicated; (2) the issue was actually litigated;
(3) the previous determination was necessary to the decision; and
(4) the party being precluded from relitigating the issue was
fully represented in the prior action."   <u>Jean Alexander</u>
<u>Cosmetics, Inc. v. L'Oreal USA, Inc</u>., 458 F. 3d 244, 249 (3d Cir.
2006), quoting <u>Henglein v. Colt Industries Operating Corporation</u>,
260 F.3d 201, 209 (3d Cir. 2001).   The Third Circuit has

7

additionally considered whether the party being precluded "had a full and fair opportunity to litigate the issue in question in the prior action," and whether the issue was determined by a final and valid judgment.  Id., quoting Seborowski v. Pittsburgh Press Co., 188 F.3d 163, 169 (3d Cir. 1999) and AMTRAK v. Pennsylvania PUC, 288 F.3d 519, 525 (3d Cir. 2002).  Doubts about application of the doctrine of collateral estoppel should usually be resolved against its use.  Howard Hess Dental Labs, Inc. v. Dentsply International, Inc., 516 F. Supp. 2d 324, 333 (2007).

We find that the four elements required to invoke collateral estoppel are present here with respect to all but one of the plaintiffs' federal claims.[2]  In Counts I and III of their Amended Complaint in the instant action, Mr. and Mrs. Anspach contend that by giving Melissa the Nordette pills without their consent, Defendants (1) violated their federal and state constitutional rights to be free from unwarranted governmental intrusion into the raising of their child, to familial privacy, to freely exercise their religious rights and (2) failed to strictly adhere to and comply with the Federal Title X program and the City's guidelines in conformity with Title X.  In Counts II and IV, the Amended Complaint avers that the defendants violated Melissa's federal and state constitutional rights to

---

[2]  In as much as neither this Court's nor the Third Circuit's earlier decisions determined the propriety of Plaintiffs' claims under the state constitution, we cannot find that the Anspachs are collaterally estopped from pursuing them now.

privacy, bodily integrity, to receive her parents' guidance and advice and to freely exercise her religious beliefs, "to enjoy life, to defend life and liberty and to pursue and obtain happiness," and to her rights under Title X to receive health care services from defendants under the direction of a physician with specialized training and expertise and in such a manner that protects the safety and dignity of the individual.[3]

Based on the identical incident and set of facts, in Counts I and III of their Complaint in Case No. 05-810, Kurt and Karen Anspach alleged that the same defendants violated their federal and state constitutionally protected rights to familial privacy, to be free from unnecessary/unwarranted governmental intrusions into how they raise their minor children and to the free exercise of their religious beliefs.  In Counts II and IV of the complaint in that suit, Melissa Anspach averred that her federal and state constitutional rights to freely exercise her religion, to receive her parents' guidance and advice in "areas touching upon fundamental privacy rights," and "to enjoy life, to defend life

---

[3]   Specifically Counts I and II invoke 42 U.S.C. §1983 to aver violations of federal constitutional and statutory law on behalf of both Mr. and Mrs. Anspach (Count I) and Melissa individually (Count II).  Counts III and IV endeavor to state nearly identical claims for interference with the parental/familial relationship, violations of the plaintiffs' rights to freely exercise their religion and to enjoyment of life, "defend life and liberty and to pursue and obtain happiness" pursuant to Article 1, Sections 1 and 3 of the Pennsylvania Constitution.

and liberty and to pursue and obtain happiness" were violated.[4]
Noting that Melissa had come to the clinic and requested morning
after pills voluntarily and that the facts of this case did not
suggest any coercion or interference with any of the plaintiffs'
enumerated constitutional rights on the part of the defendants,
the Third Circuit held that the plaintiffs had failed to allege
the requisite deprivation of a constitutional right necessary to
plead a cause of action under Section 1983.  See, Anspach v. City
of Philadelphia, *et. al*., 503 F.3d 256 (3d Cir. 2007).  We
discern no differences in the allegations underlying the
plaintiffs' claims for the defendants' alleged interference with
their parental, familial, privacy and religious rights[5] nor do

_____

[4]  The original complaint in Case No. 05-810 also contained common law
claims for assault and battery, negligent and intentional infliction of
emotional distress and negligent supervision.  In our Memorandum and Order of
June 20, 2005 we granted the defendants' motion to dismiss only insofar as the
federal constitutional/Section 1983 claims were concerned.  Finding that the
plaintiffs had failed to state a cause of action upon which relief could be
granted under the U.S. Constitution, we declined to exercise supplemental
jurisdiction over the remaining state law claims, dismissed the matter in its
entirety and remanded the matter back to the Court of Common Pleas of
Philadelphia County for disposition of the plaintiffs' state law claims.  The
plaintiffs appealed that decision to the U.S. Court of Appeals for the Third
Circuit and Judge New of the Philadelphia County Common Pleas Court stayed the
then-remanded state court action until such time as the Third Circuit ruled on
the appeal.  After the Third Circuit affirmed this Court's decision, the state
court action was re-activated, the defendants filed preliminary objections to
the complaint and the plaintiffs thereafter filed an Amended Complaint which
re-asserted the claims under Section 1983 with which we are now confronted.
The defendants thereafter again removed the action to this Court where it was
re-docketed under the present case number and again assigned to this Judge.
Defendant Shah then filed the present motion to dismiss which we now consider
in this memorandum opinion.  Accordingly, the plaintiffs' claims under the
Pennsylvania Constitution and against Dr. Shah under Pennsylvania common law
and the defendants' challenges to those claims were not previously addressed.

[5]  Interestingly, the plaintiffs themselves do not dispute that they
are re-asserting Melissa's bodily integrity or her and her parents' Fourteenth
Amendment claims.  Rather, they allege only that their reassertion of these

10

the plaintiffs themselves dispute this.  Given that the identical plaintiffs are here suing the identical defendants on all but one of the very same claims that were previously dismissed by this Court and affirmed by the Third Circuit and that it clearly appears that they were fully represented by the same counsel throughout those proceedings, we find that they are collaterally estopped from re-litigating all of their federal claims save for that concerning the possible Title X violation.[6]  We therefore shall turn next to that claim.

 *B. Title X Claims.*

 As noted, Plaintiffs also endeavor to state a claim under §1983 premised upon the defendants' purported violation of Title X of the Public Health Services Act, 42 U.S.C. §300, *et. seq*. Defendants move for dismissal of this claim on the grounds, *inter alia,* that Title X does not authorize a private cause of action.

 It is axiomatic that to state a claim under §1983, a plaintiff must allege the violation of a right secured by the

---

claims "is based on evidence that was unavailable and/or unknown to plaintiffs when plaintiffs drafted and filed their initial complaint." (Pl's Memorandum of Law in Opposition to Defendants' Motion to Dismiss, pp. 14, 16). Even if we were to assume for the sake of argument that such newly discovered evidence is a valid ground upon which to consider anew a previously adjudicated claim, at no time have the plaintiffs even revealed *what* this new evidence *is*.

 [6]   As before and for the reasons discussed *infra*, we specifically do not decide the viability of Plaintiffs' parental interference/notification, free exercise of religion, etc. claims under the Pennsylvania Constitution.

Constitution and laws of the United States[7] and must show that the alleged deprivation was committed by a person acting under color of state law.  West v. Atkins, 487 U.S. 42, 48, 108 S. Ct. 2250, 2254-2255, 101 L. Ed. 2d 40 (1988).  In this manner, §1983 provides a cause of action for violations of federally secured statutory or constitutional rights "under color of state law." Abbott v. Latshaw, 164 F.3d 141, 145 (3d Cir. 1998).[8]

That it must be a constitutional or statutorily-granted right at issue has been emphasized by the Supreme Court: "in order to seek redress through §1983, ... a plaintiff must assert the violation of a federal *right*, not merely a violation of federal *law*."  Blessing v. Firestone, 520 U.S. 329, 340, 117 S. Ct. 1353, 1359, 137 L. Ed. 2d 569 (1997), citing Golden State Transit Corp. v. Los Angeles, 493 U.S. 103, 110 S. Ct. 444, 448-449, 107 L. Ed. 2d 420 (1989)(emphasis in original).  It is thus

---

[7]  The Supreme Court has long recognized that §1983 actions may be brought against state actors to enforce rights created by federal statutes as well as by the Constitution.  See, Maine v. Thiboutot, 448 U.S. 1, 100 S. Ct. 2502, 65 L. Ed. 2d 555 (1980).

[8]  Specifically, 42 U.S.C. §1983 reads:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.  For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

insufficient for a plaintiff to merely fall within the general
zone of interest that the statute is intended to protect; nothing
"short of an unambiguously conferred right [will] support a cause
of action brought under §1983." Gonzaga University v. Doe, 536
U.S. 273, 283, 122 S. Ct. 2268, 2275, 153 L. Ed. 2d 309 (2002).
Accordingly, to sustain a §1983 action, the plaintiff must
demonstrate that the federal statute creates an individually
enforceable right in the class of beneficiaries to which he
belongs ... although "[e]ven after this showing, 'there is a
rebuttable presumption that the right is enforceable under
§1983.'" City of Rancho Palos Verdes, California v. Abrams, 544
U.S. 113, 120, 125 S. Ct. 1453, 1458, 161 L. Ed. 2d 316 (2005),
citing Gonzaga, 536 U.S. at 285, 122 S. Ct. 2268.[9]

The first step in determining whether a statutory violation
may be enforced through §1983 is ascertaining whether Congress
intended to create a federal right. Gonzaga. 536 U.S. at 283,
122 S. Ct. at 2275. Congressional intent may be found directly

---

[9]   Noting that "Courts have been inconsistent in the terms they use to
refer to 'personal rights,' sometimes calling them 'individual rights,'
'private rights,' or simply 'federal rights,'" the Third Circuit Court of
Appeals in Three Rivers Center for Independent Living, Inc. v. City of
Pittsburgh, 382 F.3d 412 (3d Cir. 2004) chose to use the term "personal
rights" throughout its opinion "to maintain the demarcation between 'personal
rights' and 'private rights of action.'" Three Rivers, 382 F.3d at 419.  The
Court went on to observe that "[p]rivate or personal rights inhere in the
individual; they are 'individually focused'; they create 'individual
entitlements.'  Non-personal rights by contrast, often have a 'systemwide' or
'aggregate' focus; are defined in terms of obligations of the person or entity
regulated rather than in terms of entitlements of the individual protected;
are 'not concerned' with whether the needs of any particular person have been
satisfied"; and regard "institutional policy and practice, not individual
instances" of conduct.  Id.

13

in the statute creating the right, or inferred from the statute's creation of a "comprehensive enforcement scheme that is incompatible with individual enforcement under §1983." Rancho Palos Verdes, 544 U.S. at 120, 125 S. Ct. at 1458, quoting Blessing, 520 U.S. at 341; A.W. v. Jersey City Public Schools, 486 F.3d 791, 801 (3d Cir. 2007).  The provision of an express, private means of redress in the statute itself is ordinarily an indication that Congress did not intend to leave open a more expansive remedy under §1983.  Rancho Palos Verdes, 544 U.S. at 121, 125 S. Ct. at 1458.

Consequently in a private right of action[10] inquiry, the courts must initially look at the text of the statute itself to determine whether Congress has explicitly provided a right to file suit.  American Trucking Associations, Inc. v. Delaware River Joint Toll Bridge Comm'n., 458 F.3d 291, 296 (3d Cir. 2006).  In so doing, we examine the statutory text for "rights creating language," *i.e.,* language that is explicit in conferring a right directly on a class of persons that includes the plaintiff in a particular case.  Doe v. Pennsylvania Board of Probation and Parole, 515 F.3d 98, 104 (3d cir. 2008), quoting Alexander v. Sandoval, 532 U.S. 275, 288, 121 S. Ct. 1511, 149 L. Ed. 2d 517 (2001) and Cannon v. University of Chicago, 441 U.S.

---

[10]  A private right of action is the right of an individual to bring suit to remedy or prevent an injury that results from another party's actual or threatened violation of a legal requirement.  Wisniewski v. Rodale, Inc., 510 F.3d 294, 296-297 (3d Cir. 2007).

677, 690, n. 13, 99 S. Ct. 1946, 60 L. Ed. 2d 560 (1979).  In
contrast, general regulatory language or "statutory language
customarily found in criminal statutes ... and other laws enacted
for the protection of the general public" provide "far less
reason to infer a remedy in favor of individual persons."  Id.,
quoting Cannon, 441 U.S. at 693.  This is because "statutes that
focus on the person regulated rather than the individuals
protected create 'no implication of an intent to confer rights on
a particular class of persons.'"  Id., quoting Sandoval, 532 U.S.
at 289.

In the absence of an explicit congressional mandate or
"rights creating" language, courts must next look to Congress'
intent in enacting a statute to determine whether it would be
appropriate to infer a right of action for the party seeking to
enforce it.  Doe, and American Trucking, both supra. For an
implied right of action to exist, a statute must manifest
Congress's intent to create (1) a personal right, and (2) a
private remedy.  Sandoval, 532 U.S. at 286;  Wisniewski, 510 F.3d
at 301; Three Rivers, 382 F.3d at 421.

The question of whether redress for a purported violation of
Title X may be had through Section 1983 appears to be a novel
issue for any court in this Circuit; indeed we have found only
two reported district court cases addressing the issue, neither

of which were in the Third Circuit.[11]  We therefore turn now to

the language of the statute to determine: (1) whether it provides

for an express, private means of redress and (2) whether it

contains the necessary "rights creating language" to evince

Congressional intent to confer a right directly on a class of

persons that includes the plaintiff in a case such as this one.

In so doing, we note that Title X of the Public Health

Service Act, otherwise entitled "Project grants and contracts for

family planning services" codified at 42 U.S.C. §§300, 300a, *et.

seq.* authorizes federal funding appropriations for family

planning services and the making of grants to the individual

states and their respective health authorities "to assist in

planning, establishing, maintaining, coordinating, and evaluating

------

[11]  Plaintiffs urge this court to follow the district court decision in
Planned Parenthood of Billings, Inc. v. State of Montana, 648 F. Supp. 47 (D.
Mont. 1986), one of only two (that we could find) cases to consider the Public
Health Service Act in this context.  In concluding that §1983 provided a cause
of action to remedy an alleged violation of Title X, the U.S. District Court
for the District of Montana considered only two requirements: (1) Congress
must not have foreclosed private enforcement of the statute and (2) the
statute must create enforceable rights. (relying on Middlesex County Sewerage
Authority v. National Sea Clammers Association, 453 U.S. 1, 19, 101 S. Ct.
2615, 2625, 69 L. Ed. 2d 435 (1981) and Pennhurst State School and Hospital v.
Halderman, 451 U.S. 1, 28, 101 S. Ct. 1531, 1545, 67 L. Ed. 2d 694 (1981).  In
so far as these are very different requirements from those which should now be
considered under Gonzaga and Rancho Palos Verdes, we decline to adhere to the
holding of the Billings court.

The only other case in which the issue apparently arose emanates from
the Western District of Texas.  In Planned Parenthood of Central Texas v.
Sanchez, 280 F. Supp. 2d 590 (W.D. Tex. 2003), the court applied Gonzaga but
could find no language in either the Title X, Title XIX or Title XX statutes
to create enforceable rights by the plaintiff, a provider of family planning
and abortion services.  Although on appeal the Fifth Circuit Court of Appeals
remanded the case for further consideration of the preemption and Supremacy
Clause issues, it "express[ed] no opinion on the district court's holding as
to the availability of §1983 in this case."  See, Planned Parenthood of
Houston v. Sanchez, 403 F.3d 324, 335 (5th Cir. 2005).

family planning services."  42 U.S.C. §300a(a).  In addition, it
empowers the Secretary of the Department of Health and Human
Services to make grants and enter contracts with both public and
non-profit private entities to conduct "research in the
biomedical, contraceptive development, behavioral, and program
implementation fields related to family planning and population,"
to develop and make available family planning and population
growth information and educational materials, and to provide the
training for personnel otherwise necessary to carry out family
planning service programs.  42 U.S.C. §§300a-1(a), 300a-3.[12]

_____

[12]  See, e.g., 42 U.S.C. §300, which states the following in relevant
part:

    **(a) Authority of Secretary**

       The Secretary is authorized to make grants to and enter into
    contracts with public or nonprofit private entities to assist in the
    establishment and operation of voluntary family planning projects which
    shall offer a broad range of acceptable and effective family planning
    methods and services (including natural family planning methods,
    infertility services, and services for adolescents).  To the extent
    practical, entities which receive grants or contracts under this
    subsection shall encourage family participation in projects assisted
    under this subsection.

    **(b) Factors determining awards; establishment and preservation of rights
    of local and regional entities**

       In making grants and contracts under this section, the Secretary
    shall take into account the number of patients to be served, the extent
    to which family planning services are needed locally, the relative need
    of the applicant, and its capacity to make rapid and effective use of
    such assistance.  Local and regional entities shall be assured the right
    to apply for direct grants and contracts under this section, and the
    Secretary shall by regulation fully provide for and protect such right.

    **(c) Reduction of grant amount**

       The Secretary, at the request of a recipient of a grant under
    subsection (a) of this section, may reduce the amount of such grant by
    the fair market value of any supplies or equipment furnished the grant
    recipient by the Secretary.  The amount by which any such grant is so
    reduced shall be available for payment by the Secretary of the costs
    incurred in furnishing the supplies or equipment on which the reduction

Although the Act prohibits discrimination in the employment, promotion or termination of any physician or other health care professional because of their having performed or assisted in the performance of a lawful sterilization procedure or abortion or on the basis of their religious or moral convictions and prohibits the use of appropriated funds in programs where abortion is a method of family planning, it contains only a criminal sanction against any officer or employee of the U.S., state or local political subdivision or of any program receiving Federal funds who coerces or tries to coerce anyone to undergo an abortion or sterilization procedure by threatening them with the loss of Federal benefits.  42 U.S.C. §300a-8.[13]  We therefore find no provision of an express, private means of redress in the statute itself nor do we find that the statute created a "comprehensive enforcement scheme."  <u>Rancho Palos Verdes</u>, 544 U.S. at 120.   We therefore next consider whether or not the Title X statute confers an individual right enforceable by persons situated such as the plaintiffs are here.  <u>See</u>, 42 U.S.C. §§300a-6, 300a-7.

In reviewing Title X, we find that the tenor and goal of the entire statute appears to be the provision of funding – for

---

of such grant is based.  Such amount shall be deemed as part of the grant and shall be deemed to have been paid to the grant recipient.

.....

[13]  In that event, a violator is subject to a $1,000 fine, imprisonment for up to one year or both.

family planning research and education, for training of medical personnel and for the operation of clinics for the benefit of members of the general public.  It thus appears that Congress had only the benefit of the general public in mind when it enacted Title X; nowhere did it speak in terms of a particular individual or class of individuals nor does the statute contain any language from which we could infer that Congress intended to confer any enforceable rights upon any individual member of the public in the event that the statute should somehow be violated.  We therefore conclude that in enacting Title X Congress had no intention of conferring a private right of action under Section 1983 on individuals situated such as the Anspachs.

Of necessity, we likewise conclude that the plaintiffs have failed to state a §1983 cause of action for the defendants' purported violation of the regulations and guidelines promulgated under Title X.[14]  This is because the Third Circuit has held that

---

[14]  Specifically, Plaintiffs invoke 42 C.F.R. §59.5 concerning "[w]hat requirements must be met by a family planning project,"

(a) Each project supported under this part must:

   (1) Provide a broad range of acceptable and effective medically approved family planning methods (including natural family planning methods) and services (including infertility services and services for adolescents).  If an organization offers only a single method of family planning, it may participate as part of a project as long as the entire project offers a broad range of family planning services.

   (2) Provide services without subjecting individuals to any coercion to accept services or to employ or not to employ any particular methods of family planning.  Acceptance of services must be solely on a voluntary basis and may not be made a prerequisite to eligibility for, or receipt of, any other services, assistance from or participation in any other program of the applicant. (footnote omitted)

(3) Provide services in a manner which protects the dignity of the individual.

(4) Provide services without regard to religion, race, color, national origin, handicapping condition, age, sex, number of pregnancies, or marital status.

(5) Not provide abortion as a method of family planning.  A project must:

(i) Offer pregnant women the opportunity to be provided information and counseling regarding each of the following options:

(A) Prenatal care and delivery;

(B) Infant care, foster care, or adoption; and

(C) Pregnancy termination.

(ii) If requested to provide such information and counseling, provide neutral, factual information and nondirective counseling on each of the options, and referral upon request, except with respect to any option(s) about which the pregnant woman indicates she does not wish to receive such information and counseling.

(6) Provide that priority in the provision of services will be given to persons from low-income families.

(7) Provide that no charge will be made for services provided to any persons from a low-income family except to the extent that payment will be made by a third party (including a government agency) which is authorized to or is under legal obligation to pay this charge.

(8) Provide that charges will be made for services to persons other than those from low-income families in accordance with a schedule of discounts based on ability to pay, except that charges to persons from families whose annual income exceeds 250 percent of the levels set forth in the most recent Poverty Guidelines issued pursuant to 42 U.S.C. 9902(2) will be made in accordance with a schedule of fees designed to recover the reasonable cost of providing services.

(9) If a third party (including a Government agency) is authorized or legally obligated to pay for services, all reasonable efforts must be made to obtain the third-party payment without application of any discounts.  Where the cost of services is to be reimbursed under title XIX, XX, or XXI of the Social Security Act, a written agreement with the title XIX, XX or XXI agency is required.

(10)(i) Provide that if an application relates to consolidation of service areas or health resources or would otherwise affect the operations of local or regional entities, the applicant must document that these entities have been given, to the maximum feasible extent, an opportunity to participate in the development of the application.  Local and regional entities include existing or potential subgrantees which have previously provided or propose to provide family planning services

to the area proposed to be served by the applicant.

(ii) Provide an opportunity for maximum participation by existing or potential subgrantees in the ongoing policy decisionmaking of the project.

(11) Provide for an Advisory Committee as required by §59.6.
(b) In addition to the requirements of paragraph (a) of this section, each project must meet each of the following requirements unless the Secretary determines that the project has established good cause for its omission.  Each project must:

(1) Provide for medical services related to family planning (including physician's consultation, examination, prescription and continuing supervision, laboratory examination, contraceptive supplies) and necessary referral to other medical facilities when medically indicated, and provide for the effective usage of contraceptive devices and practices.

(2) Provide for social services related to family planning, including counseling, referral to and from other social and medical services agencies, and any ancillary services which may be necessary to facilitate clinic attendance.

(3) Provide for informational and educational programs designed to –

(i) Achieve community understanding of the objectives of the program;

(ii) Inform the community of the availability of services; and

(iii) Promote continued participation in the project by persons to whom family planning services may be beneficial.

(4) Provide for orientation and in-service training for all project personnel.

(5) Provide services without the imposition of any durational residency requirement or requirement that the patient be referred by a physician.

(6) Provide that family planning medical services will be performed under the direction of a physician with special training or experience in family planning.

(7) Provide that all services purchased for project participants will be authorized by the project director or his designee on the project staff.

(8) Provide for coordination and use of referral arrangements with other providers of health care services, local health and welfare departments, hospitals, voluntary agencies, and health services projects supported by other federal programs.

(9) Provide that if family planning services are provided by

21

a federal regulation alone may not create a right enforceable through Section 1983 that is not already found in the enforcing statute.  <u>South Camden Citizens in Action v. New Jersey Department of Environmental Protection</u>, 274 F.3d 771, 782-790 (3d Cir. 2001).   In other words, a plaintiff can only enforce a regulation under §1983 if the regulation "merely defines the specific right that Congress already has conferred through the statute" and therefore regulations give rise to a right of action only insofar as they construe a personal right that a statute creates.  <u>Three Rivers</u>, 382 F.3d at 424, quoting <u>South Camden</u>, 274 F.3d at 790.  Given that we cannot find any intent on the part of Congress to confer a private right of action under Title X on these plaintiffs, we are compelled to dismiss their §1983 claims based upon the regulations as well.

## Conclusion

For all of the foregoing reasons, we shall grant the defendant's motion to dismiss the plaintiffs' Amended Complaint

---

contract or other similar arrangements with actual providers of services, services will be provided in accordance with a plan which establishes rates and method of payment for medical care.  These payments must be made under agreements with a schedule of rates and payment procedures maintained by the grantee.  The grantee must be prepared to substantiate, that these rates are reasonable and necessary.

(10) Provide, to the maximum feasible extent, an opportunity for participation in the development, implementation, and evaluation of the project by persons broadly representative of all significant elements of the population to be served, and by others in the community knowledgeable about the community's needs for family planning services.

only as to the federal claims, shall again decline to exercise
supplemental jurisdiction and remand the remaining state law
claims to the Court of Common Pleas of Philadelphia County via
the attached Order.[15]

---

[15]   While we directed the parties to submit supplemental briefing on the
question of whether Dr. Shah was acting as a state actor/employee or an
independent contractor for purposes of Section 1983, we simply cannot make a
definitive finding on that point based upon the record evidence before us.
However, in view of our holding with respect to whether suit under Section
1983 will lie for these plaintiffs to enforce Title X, we need not address
this issue.  Additionally, Defendant has moved to dismiss Plaintiffs' Title X
claim on the grounds that it is barred by the two year statute of limitations.
However, accepting as true the allegations in the amended complaint that
Plaintiffs did not learn of certain underlying facts until such time as they
began to undertake some discovery and construing those averments in the light
most favorable to the plaintiffs, we would be constrained to find it plausible
that the plaintiffs would be able to demonstrate entitlement to relief under
the discovery rule.  The motion to dismiss on the basis of the statute of
limitations must therefore be denied.

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

```
MELISSA L. ANSPACH, KURT A.      :
ANSPACH, and KAREN E. ANSPACH    : CIVIL ACTION
                                 :
          vs.                    :
                                 : NO. 08-CV-2600
CITY OF PHILADELPHIA, DEPT. OF   :
PUBLIC HEALTH, ET. AL.           :
```

**<u>ORDER</u>**

<u>        </u>AND NOW, this    27th    day of October, 2008, upon

consideration of the Motion of Defendant Jitendra Shah, M.D. to

Dismiss Plaintiffs' Amended Complaint pursuant to Fed. R. Civ. P.

12(b)(6), for a More Definite Statement Pursuant to Fed. R. Civ.

P. 12(e), and to Strike Pursuant to Fed. R. Civ. P. 12(f) (Docket

No. 7), and Plaintiffs' Responses thereto, it is hereby ORDERED

that the Motion is GRANTED IN PART, Counts I and II of the

Amended Complaint invoking 42 U.S.C. §1983 are DISMISSED, and

this case is REMANDED to the Court of Common Pleas of

Philadelphia County.  <u>See</u>, 28 U.S.C. §1331, §1367(c).

                              BY THE COURT:




                              <u>s/J. Curtis Joyner          </u>
                              J. CURTIS JOYNER,        J.